UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

    - v. -                                      :         14 Cr. 222 (NRB)

YENCHUN STEPHEN CHEN,                 :

               Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                                  PREET BHARARA
                                                  United States Attorney for the
                                                  Southern District of New York
                                                  Attorney for the United States of America


Edward B. Diskant
Assistant United States Attorney
      - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

           - v. -                   :           14 Cr. 222 (NRB)

YENCHUN STEPHEN CHEN,               :

           Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## SENTENCING MEMORANDUM

The Government respectfully submits the following memorandum in connection with the sentencing of Yenchun Stephen Chen (the "defendant"), which is scheduled for June 9, 2015. For the reasons that follow and consistent with the recommendation of the U.S. Probation Office ("Probation") as set forth in its Presentence Report (the "PSR"), the Government submits that a sentence within the applicable Guidelines range of 33 to 41 months' imprisonment would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

### I. BACKGROUND

**A.    Offense Conduct**

The defendant was charged on April 1, 2014, by Information 14 Cr. 222 (NRB) (the "Information") with one count of conspiracy to commit bank fraud in violation of Title 18, United States Code, Section 1349, and one count of bank fraud in violation of Title 18, United States Code, Section 1344.  (PSR ¶¶ 1-3.)  The charges stem from the defendant's participation in a long-running conspiracy to commit bank fraud through the submission of fraudulent loan applications to various institutions insured by the Federal Deposit Insurance Corporation

("FDIC").  The scheme, which involved more than a dozen participants in total, entailed among other things, fraudulent loan applications supported by fake and fraudulent documents, including tax returns and title reports, indicating that the borrower was eligible for the loan being sought and that the property being purchased would sufficiently collateralize that loan.  In truth and in fact, none of the borrowers involved in the scheme were eligible for the loans they sought, nor were the properties being purchased particularly valuable.  In total, through the investigation, the Government identified at least 10 fraudulent loan applications associated with the conspiracy, with a total value in excess of $7 million (PSR ¶¶ 7-14.)

The scheme worked, in general terms, as follows:  *First*, the scheme participants would create a shell corporation that would serve as the "seller" of the property in question.  Typically, the shell corporation would not actually own the property which was instead an abandoned lot or building already in foreclosure.  *Second*, with the help of dirty title preparers like this defendant, that property would be "titled" in the shell corporation and made to appear to be incredibly valuable.  *Third*, straw borrowers recruited to pose as buyers of the property would submit false loan applications attaching fraudulent documents purportedly demonstrating their eligibility for large loans.  *Fourth*, once the loan was approved – based on the buyer's fake credentials and the title preparer's fraudulently inflated assessment of the property – the money would be transferred to the shell corporation as the "seller" of the property and dispersed to the scheme participants.  The banks, in turn, would be left with distressed properties that had very little, if any, value.

As noted above, this defendant, as the owner of a title company, worked in furtherance of the scheme principally by creating fake and fraudulent title reports ostensibly confirming that the shell corporations/sellers in the fraudulent sales not only owned the properties in question and had owned them for at least 90 days.   That process – referred to as "seasoning" a title – was

important because lenders were generally far more reluctant to extend loans where the seller had only recently acquired the property.  As noted above, in truth, the "sellers" in this scheme typically did not actually own the properties being "sold" at all making the defendant's participation in the scheme essential to its success.  (*E.g.*, *id.* ¶ 14.)  While participating in the scheme, the defendant created reports used in furtherance of at least four fraudulent loan applications, reaping profits of loans that caused a total loss to banks of more than $1.1 million.

Separate from the scheme describe above, but as part of his fraudulent use of his title company, the defendant also made money by stealing "recording fees" provided by unknowing and legitimate customers – fees the defendant was supposed to use to record various documents relevant to the real estate transaction at issue, including the mortgage documents indicating these legitimate customers' purchase of the home.  In total, the defendant stole more than $400,000 in such recording fees, money the defendant simply pocketed instead.

On July 22, 2014, the defendant entered a plea of guilty to both counts of the Information pursuant to an agreement with the Government.  As part of that agreement, the defendant accepted responsibility for his participation in the core bank fraud scheme described above and, in particular, for loan applications completed as part of the scheme with a combined value of approximately $1.1 million.  The parties further agreed to a total offense level of 20, a Criminal History Category I, and a guidelines range of 33-41 months' imprisonment.  (*Id.* ¶ 5.)

**B.      The Guidelines Calculations**

As stipulated to by the parties as a condition of the plea agreement and as independently determined by the U.S. Probation Department, the November 1, 2014 Guidelines manual is applicable to the defendant in the following manner:

The applicable Guideline provision for Count One is U.S.S.G. § 2B1.1, and pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 7.  (*Id.* ¶ 20.)

Pursuant to U.S.S.G. § 2B1.1(b)(1)(I), 16 levels are added because the loss amount was more than $1,000,000 but not more than $2,500,000.  (*Id.* ¶ 21.)

Finally, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), a three-level reduction is warranted for the defendant's timely demonstration of acceptance of responsibility.  (*Id.* ¶ 28).  Thus, the defendant's total adjusted offense level is 20.  (*Id.* ¶ 29).

The defendant has one criminal history point based on a 2009 conviction for driving while ability impaired and, as such, is in Criminal History Category I.  With a total offense level of 20 and a Criminal History Category of I, the defendant's applicable Guidelines range is 33 to 41 months' imprisonment (the "Stipulated Guidelines range")

## II.  DISCUSSION

In light of the nature of the instant offense as well as the history and characteristics of this defendant, the Government respectfully submits that a sentence within the Stipulated Guidelines range of 33 to 41 months imprisonment would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.  The defendant was a repeated participant in a sophisticated scheme to steal hundreds of thousands of dollars at a time from federally insured banks, taking advantage of his self-owned title company in the process.  A significant sentence is thus warranted to reflect the seriousness of the offense and to provide both general and specific deterrence.

Indeed, application of the Section 3553(a) factors in this case militates in favor of a Guidelines sentence:

*First*, a substantial sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).  As detailed above, the defendant's conduct was serious, repeated, and sophisticated – on multiple occasions over the course of several years, the defendant prepared fake and fraudulent title reports and associated documents essential to the scheme's success.  Moreover, there can be no doubt that the defendant fully understood, at the time, that he was deceiving banks into making loans they otherwise might not have extended – the very nature of the defendant's conduct, creating paperwork that was not only false but that could serve no legitimate purpose, bespoke his clear understanding at all times of the fraudulent and deceptive nature of the scheme in which he was participating.  Indeed, it bears particular mention in this respect that separate and apart from the core bank fraud scheme, the defendant embezzled more than $400,000 from his own customers, people who were led to believe their property purchases were being duly recorded when, in fact, the recording fees they paid went to straight into the defendant's pocket.  A substantial sentence, thus, is warranted to reflect the seriousness of that conduct and the magnitude of the harm caused as a result.

*Second*, a substantial sentence is necessary to afford adequate deterrence.  *See* 18 U.S.C. § 3553(a)(2)(B).  As a preliminary matter, with respect to specific deterrence, the defendant's ready willingness to repeatedly engage in fraudulent conduct – and to essentially turn his business into a vehicle for committing fraud on banks and his own customers – itself bespeaks the seriousness of the conduct and the need to deter this defendant from future crimes.  That is particularly true given that the defendant has failed to live a law abiding life even since being arrested on the instant charges.  Indeed, not only has the defendant repeatedly failed drug tests while out on bail – including as recently as April 2015 – but the defendant was then arrested in

November 2014 on state felony forgery charges stemming from conduct unrelated to the instant offense. These incidents, each of which has been the subject of a violation memorandum from Pretrial Services, strongly suggests the need for a prison term to prevent this defendant from continuing to engage in unlawful activity.

With respect to general deterrence, a substantial sentence is necessary to send a message to title preparers and other professionals like this defendant, that creating fake documents in furtherance of fraudulent loan applications is serious crime for which the consequences are likely to include prison time. The need for general deterrence in this regard is especially strong given the recent epidemic of fraud in connection with loan and mortgage applications and the relative ease with which someone like this defendant could alter or fabricate paperwork in return for cash payments. A substantial sentence thus is appropriate here to properly reflect the serious nature of the crime and the correspondingly serious penalties that will result from such criminal conduct.

In seeking a downward variance, the defendant makes a series of arguments, one which warrants a direct response. In particular, the defendant contends that his first attorney effectively sabotaged his cooperation efforts adding that "had Mr. Chen not been betrayed by his first advisor, he might stand before the Court in a much more favorable posture." (Def. Submission at 3.) The argument distorts the facts. After his arrest, the defendant did indicate a desire to cooperate and, toward that end, met with the Government on a number of occasions. During those proffer sessions, and as the defendant identified additional co-conspirators, it became clear to the Government and to prior counsel that the defendant's initial attorney might have a conflict should the defendant's cooperation continue. As a result, the Government made efforts to have new counsel appointed – efforts the defendant initially opposed and substantially delayed – so that the defendant could continue in his efforts to cooperate. The defendant's attempts at

cooperation were ultimately futile not because of his prior counsel's conflict but because of the defendant's own conduct which included, among other things, substantial prior criminal conduct disclosed during these proffer sessions, continued drug use while out on supervised release, extended delays between proffer sessions caused by the defendant, and ultimately his state arrest on unrelated forgery charges, all of which rendered the defendant effectively unusable as a cooperator. To be clear, the Government does not seek to punish the defendant for any of the above or for the failure of his cooperation efforts more generally. But it is simply inaccurate to suggest that failure was caused by anything or anyone beside the defendant himself.

### III. CONCLUSION

For the foregoing reasons, and consistent with the recommendation of Probation, the Government respectfully submits that a sentence within the advisory Guidelines range of 33 to 41 months' imprisonment is appropriate here and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Dated: New York, New York
June 9, 2015

    Respectfully submitted,

    PREET BHARARA
    United States Attorney
    Southern District of New York

By:   /s/_____
    Edward B. Diskant
    Assistant United States Attorney
    (212) 637-2294